Good morning. My name is Vicki Buchanan. I'm here on behalf of Russell Wyatt Pierce. The question, the ultimate question in this case is whether Mr. Pierce's plea was voluntary. In order to get to that, we have to go through ineffective assistance of counsel as to whether or not they should have filed a suppression motion. And the most fundamental issue that starts this whole argument is whether or not a reasonable person in Mr. Pierce's shoes would have decided that they were in custody for the purposes of the Miranda warnings in this case. It started off when Mr. Pierce turns himself in and goes to the police station to discuss the theft of some stolen credit cards. So he goes in and everybody says, you know, just come sit down, let's have a conversation, tell me what you know about these stolen credit cards. And Mr. Pierce voluntarily tells the officers, yes, I'm the one that stole these cards, I have a problem, I'd like to make 900 calls, and that's – I was the one that stole these credit cards. At that point in time, I think we have a voluntary confession, at that point in time. Yes, so what's the consequence of that? Of the voluntary confession? The consequence of that is I think the same thing that happened in Tobias. At that point in time, the police would have been following – not Tobias, Matheson. The police would have been following the procedure of them giving him his Miranda warnings at that point in time if they wanted to question him further at that particular point in time. They continued. So now we're in kind of a little bit of a gray area here. What's the case that says that all of a sudden once the police have a really good case on you, they have to give Miranda warnings? That's not what custody is about. No, it's about custody. When you – when a reasonable person would think they're in custody, a reasonable person would – once they've come to turn themselves in, would think that once they've confessed to what they came to turn themselves in, would think that they're probably not going home that night. They probably are in custody. Is there some case that says that? There was a California case that I cited, too, but it's a little bit contrary to the Federal law just from the standpoint that they said that, you know, you probably are in custody once the police have probable cause. That's a Sassoni case. And as I read through that again, I realized that it was – it has probably – it's not the subjective view of what the police officers are actually thinking. It is more the objective standards of what the defendant is thinking at the time that he's in custody. So it's a reasonable person standard, which is actually a de novo issue, based on this particular area of the law, as to whether a reasonable person would think that once they confess to two burglaries, they are in custody. If they're in a police station, they've confessed. Well, would the same thing be true for one confession? He'd only confessed to one burglary? Well, I think what happened, there was no interrogation leading to the two confessions. Well, I understand, but would it make – is it your position that if you go in and say, look, I committed this one burglary, that then you would – you, a reasonable person, would objectively believe himself to be under arrest? I believe that would be probably true. In this particular case, there's more and more indicia as we go along through the procedure as to that he is, in fact, in custody. There's more and more things that we talk about. So the question that was certified is whether trial counsel was deficient and for not making that motion and whether there was prejudice as a result of that deficiency. And you've already said that at least a portion of the confession didn't – was made and would not have been taken out based on not having had his Miranda rights. So how can you argue that there would have been any difference in the outcome here? Oh, I think there's a really huge, substantial difference, because what happens after that, as we go down further the timeline, Mr. Pierce next agrees that he – they question him now about the second burglary – the third – a third burglary. But suppose that evidence all comes out. The police already had in its hands a lot of other evidence. In fact, they already suspected Mr. Pierce. I mean – Well, the one thing that the prejudice and the ineffective assistance of counsel is that the – as a result of this questioning, it led to him sitting back down and going through the same amount of questioning again and writing out in longhand the exact same thing he had told them orally before he got his Miranda warnings. And then after the Miranda warnings, then he had them write it out in handwriting. And there's a part of the record where the – Mr. Pierce and his wife are saying we don't want to plead guilty. He doesn't want to plead guilty. This is an identity case. So the government's going to have to prove who the identity of the perpetrator was in the rape and in the second – in the third – the third burglary that he didn't come in to confess. And the defense counsel in the record says, I can't get beyond that written confession. You know, we're getting the water on that written confession. So if the written confession – if they had gone through and suppressed at least the written confession part, there would – the police could have testified to the earlier statements that he made about the two burglaries. But being sentenced for two residential burglaries is a lot different than being sentenced to three residential burglaries plus a rape. But that's not exactly the prejudice question. The prejudice question is under Hill v. Lockhart whether he would have pled nevertheless. And I don't see anything in the evidence that shows that he would have done anything any different. I mean, the most he says is that had he been advised differently, he thinks he could have gotten a better deal. That is, he might not have settled for this deal. But nowhere does he say he would have tried the case. So where's the prejudice? Well, I don't – the problem is we don't know what the evidence that the government – what they had. They thought he was here, but there was also – was the person involved. But then later on, as you see through the record, there's indications that they had lost the DNA evidence or the DNA evidence. But what I'm saying, I'm looking here at the record, which is now in habeas, that there's nothing to show that had his counsel advised any differently, he would not have entered a guilty plea. That is, that he would have gone to trial, which is the applicable prejudice standard. So if that's true, how did the California Superior Court's determination that there weren't enough facts to support the Hill v. Lockhart claim contravene clearly established Supreme Court precedent? Well, the California – the Superior Court never got to the issue. They should have. Sure, it did. In the first petition, the first petition raised the Hill issue, raised the same issue that's here now. And the California Superior Court denied that petition on the merits. So we have to decide. It didn't give any reason, so we look at it independently. But the question remains, why was that determination contrary to Hill? Because they never gave – because the – it seems that when – we don't know what would have happened if there had been a suppression motion. We don't know whether it would have been a more favorable result. That's not the prejudice question when you're talking about entering a guilty plea. The prejudice inquiry under Hill is whether he would have done – he would have pled or whether he would have gone to trial. If there had – but I – my problem is I'm trying to think that if he had had a suppression motion and he had lost, then he would have – then he may have pled. But at least give him the opportunity to – we don't know what he would have done if he hadn't – if he hadn't – if the written confession had not come in. Okay? And I'll just reserve. Surely. Mr. Glassman? Thank you. Good morning, and may I please record David Glassman for the Respondent. First, I'd like to address a couple of points made by Judge Reimer and then to your point, Judge Wardlaw. There is a merits denial. I think it's at excerpts, page 150. Here is what I'm sorry. A merits denial, pardon me, by the superior court. There is also – and I think there's some confusion in the briefing, and so for our part, I'll apologize for that. There is a merits denial as well in the alternative by the State appellate court, the intermediate appellate court, which denies the petition on procedural grounds, but in addition has a citation to the same principle, which is a failure to state facts for relief. So there are, in fact, a couple of merits denials on this claim. So we are looking at whether or not there was a reasonable interpretation of the claim under the AEDPA standard, and the question I think, as Judge Wardlaw was asking it, has to do with how we resolve the Strickland claim. That is the claim that the court has granted review of in this appeal. So the question becomes, in what respect demonstrably and as a matter of controlling Federal constitutional law was this lawyer ineffective? Now, we know that the lawyer was not oblivious to the legality of the confession, and we know that because in the preliminary examination where the evidence is presented, he's questioning the officer specifically about the circumstances of the statement. In fact, at one point in that dialogue, he takes him on vor dire because that's the only issue he's interested in pursuing. And we also know ultimately that he declines to file a suppression motion. But the analysis here requires us to look and see what, under the controlling constitutional law in the Strickland realm, and more specifically the case law about Miranda, what would compel a reasonable lawyer to assert the Miranda violation. And I think it's telling that in counsel's statement, she indicates, well, it's Oregon v. Mathiasen. That would be the controlling case. Oregon v. Mathiasen is a case where no Miranda violation is found. And that is true of the cases, all of the cases that, for example, the district court relies upon, such as Stansbury and Yarborough v. Alvarado. They're all cases in which factors such as those present in this case, voluntary attendance at a police station, an open door, an indication that the suspect has not been arrested, are all found to be significant in the analysis of whether or not custody is present. And the only way that there's sort of a variation in this case is at one point it's alleged here that this is a Siebert case, that this is an intentional violation of Miranda. And as to that, I would point out a couple of things. And the first is that Siebert, there was no claim in this case of an intentional police practice such as was established in Siebert of violating Miranda to extract a statement and then obtain the same statement under Miranda. So Siebert's irrelevant. But second of all, I think it's important here, whether the Court reaches our argument with respect to the timeliness of this appeal or not, that this preliminary examination, these facts were elicited 15 years ago in a preliminary examination in 1996. And it was only in 2005, I believe, that this petitioner decided to initiate a federal challenge to this case. And so that when we, if there's a discussion about who we're being tough on, that completely unexplained denial, other than sort of a blanket explanation that, you know, it's too dangerous for me to head into the law library and that's why I wait seven years and file a claim. The question is what the controlling law was when this lawyer evaluated this case. And under that controlling law, there was no compulsion for the lawyer to assert a Miranda violation, having decided that it was not appropriate or was not meritorious. So is there anything in the record, and if not in the record, that maybe hypothetically that would be a strategic reason for not filing the Miranda? Well. Based on what the attorney did or didn't do or? I think, you know, as the Court is aware, and as Strickland indicates, of course, we don't know all the circumstances outside the record that may have motivated the decision in this case. All I can say as to that, because certainly one could have asserted a Miranda violation in the case. So the only thing I would say as to that is that we do know, based on the attorney's questioning of the officers, which is somewhat unusual, you know, that he would be so aggressive about it, that either a couple of factors may have been involved. I think the most obvious would be the attorney was satisfied that notwithstanding the fact that there were facts that one could argue, ultimately, he was not going to prevail. And because we also know from the record that this is a case in which there was an interest articulated by the defendant in negotiating disposition of the case, the case, unless there was a glaring error that required litigation, the defendant wished that it would be resolved. And we also know that the sentence that was worked out was far less than the exposure that he faced. So all I can say, based on the totality of what appears in the appellate record, is that it was not a, it did not appear to be a winning Miranda claim, and in light of the circumstances, most of which are not made clear from this or any other record, the motion was not made. And although we don't know it in the record, you would think just from common sense experience that a reasonable defense attorney might think that if I was fighting tooth and nail on the motion, maybe I wouldn't get as good a deal from the prosecutor or from the court. And that was the point that I was making, that unless it was recognized that in fact this was likely to succeed. But I think when one reads that preliminary examination, and the officer appears, well, it's easy for me to say, but the officer appears credible and gives the defense some favorable information in terms of the circumstances, but ultimately the objective facts are he came on his own. He indicated he wanted to talk. He came with his wife and his pastor. The record indicated that he came either with them or at their encouragement and that he came with one of them and that he wanted to talk about the case. And that so for all those reasons, had there been a Miranda motion, we certainly can't say as a matter of law it would have been successful. Thank you. Okay. Ms. Buchanan. First of all, the trial attorney that conducted the preliminary hearing was not the same attorney. In fact, he did a very vigorous – that's the reason the record is so strong in this particular case on what happened in the timeline of questioning of Mr. Pierce, including the time when they tell him, We think you are the person who committed this rape, and so do you want to talk to us about it? Now, that is a subjective statement, but it is communicated to the person, to Mr. Pierce. And according to Stansbury, that is a factor to be considered whether he was in custody. So whether this particular attorney made the decision or thought it was a weak case after interrogating is irrelevant because it was a different public defender who did the preliminary hearing than the person that took over the case like a month later and then pled guilty three months later. So it was a very short period of time from the time of the preliminary hearing where this information came out until the decision – until he pleaded guilty. The trial court did deny based on insufficient evidence. There's no specific ruling on Strickland. It was just denied on all grounds, as did the court of appeal. The government says that this was not a Siebert situation. This is pretty classic Siebert. If you read through Siebert, the situation – It didn't exist at the time. What's that? It didn't exist at the time. It did exist at the time the district court made its ruling on the habeas corpus petition. And I don't remember the date. And he wasn't under arrest before he started talking. Arrest in custody. Maranda doesn't require arrest. No, but Siebert is. It doesn't require arrest. It just requires custody. He was arrested, and they got the confession. Then they Mirandized him to try to cure the problem. And that's the whole – that's the catch. But Miranda wouldn't be correct if you're in custody even if you aren't under formal arrest. That's the point of Miranda. I think there's a strong extension of that case. In this particular case, the police officers did say that they questioned him all the way through on all these charges even after he broke down before confessing the rape. And they did question him all the way through. And then when it came time – this is on page 473 – then they stopped, then they read him as Miranda writes, and they said, we specifically went back identical – well, I'm paraphrasing, but they went back and did the identical questioning. Judge Wardlaw, you asked about the seven years afterwards. The government filed a motion to dismiss based on the late filing. That was before the district court. Mr. Pierce presented substantial evidence. It is not in this particular – in the excerpts of the record because it wasn't an issue, because the government essentially waived that issue. After Mr. Pierce came back with affidavits from other fellow prisoners, from other people, substantial evidence about why he was unable to file his petition, it wasn't just because he was a sex offender. The district – I mean, the superior court had, for years after year after year, had incorrectly listed him as someone who had committed a rape on less than a 14-year-old. That kept getting corrected, and then it got put back again. And so Mr. Pierce, in fact, in one of these things that's in the record but not in the excerpts of the record, actually tried to save the life of a fellow sex offender who had his throat slit. So Mr. Pierce was afraid because they found out he was a sex offender. And that man died. So Mr. Pierce felt compelled to stay away from the library and everything until he was moved to Avenal, which is a much lower risk facility. So there was grounds for that. But the government, once he filed his declaration, and once the judge – and once the district court judge said, yes, I think there's substantial evidence of a reason, an impediment to his filing all these petitions, the government said, okay, well, we'll just go with the substantive Miranda issue and then we'll come back again in case we lose this particular case. So that's the reason for the seven years of delay. Nothing further? Okay. Thank you. Thank you, counsel. Thank you. Thank you both. The matter just argued to be submitted.
judges: Kennelly, Rymer, Wardlaw